IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM DeFORTE, <br><br> Plaintiff, <br><br> v. <br><br> COLONEL TYREE C. BLOCKER, Acting Commissioner of the Pennsylvania State Police; CORPORAL JOSEPH R. ZANDARSKI (individually and as an Officer in the Pennsylvania State Police), jointly and severally, <br><br> Defendants. | Civil Action No. 2:16-cv-113 |

## OPINION

**Mark R. Hornak, United States District Judge**

Presently pending in the above-captioned matter is the Plaintiff's motion for reconsideration (ECF No. 16) of the Court's Opinion and Order entered on March 24, 2017 (ECF Nos. 12 and 13) which, in relevant part, dismissed Plaintiff's Fourth Amendment malicious prosecution claim against Defendant Joseph R. Zandarski. For the reasons that follow, Plaintiff's motion will be denied.

### I. BACKGROUND

At Count I of the Complaint, Plaintiff asserted a §1983 claim against Zandarski predicated, in part, on a theory of malicious prosecution. To prove such a claim, a plaintiff must show: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff

1

suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

In moving to dismiss the Complaint, Zandarski challenged only the fifth element. This Court agreed that the requisite deprivation of liberty had not been pled, and it dismissed the claim. In doing so, the Court discussed the concept of "continuing seizures" as it has been applied in two Third Circuit opinions: *Gallo v. City of Phila.*, 161 F.3d 217 (3d Cir. 1998), and *Black v. Montgomery Cty.*, 835 F.3d 358, 364-65 (3d Cir. 2016), *as amended* (Sept. 16, 2016). The Court concluded that Plaintiff had failed to allege restraints on his liberty that were comparable to those which the plaintiffs in *Gallo* and *Black* had experienced:

> [DeForte] claims that he was charged by Zandarski for theft of a firearm, theft of the fire hall radios, and theft of the money from the prostitution sting operation. The docket sheet from DeForte's criminal proceeding indicates that these were second-degree felony and first-degree misdemeanor charges, so it is fair to say that the alleged criminal offenses—like the crimes at issue in *Gallo* and *Black*— were serious. However, the docket further indicates that DeForte was released on his own recognizance. DeForte does not aver that he was arrested or required to post bond. Further, he does not allege that he was restricted in his travel or required to report to the court on a regular basis prior to the case being *nolle prossed*. In short, there are no allegations indicating that DeForte was subjected to the type of "onerous" pretrial restrictions that might constitute a Fourth Amendment "seizure." *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (noting that "pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," and holding that plaintiffs were not "seized" for purposes of a Fourth Amendment malicious prosecution claim when they were only issued a summons, they appeared in court only at their municipal court trial for criminal trespass, they were never arrested, they never posted bail, they were free to travel, and they did not have to report to pretrial services.).

(Op. at 18-19, ECF No. 12.) Based on this line of analysis, the Court dismissed the §1983 malicious prosecution claim. Because it perceived no grounds upon which the deficiency could be cured through further amendment, the Court dismissed the claim with prejudice. Plaintiff now seeks a reconsideration of the Court's ruling.

2

## II. STANDARD OF REVIEW

A proper motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *see also* Fed. R. Civ. P. 59(e); *Allah v. Ricci*, 532 F. App'x 48, 51 (3d Cir. 2013) (citations omitted); *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). This Court has previously observed that a motion for reconsideration that "essentially restates, with added vigor, the arguments made previously" does not satisfy this "substantial standard." *Peerless Ins. Co. v. Pa. Cyber Charter Sch.*, 19 F. Supp. 3d 635, 651 (W.D. Pa. 2014) (quoting *Trunzo v. Citi Mortg.*, 876 F. Supp. 2d 521, 544 (W.D. Pa. 2012)).

Because Plaintiff has claims still pending before the Court in this litigation, the ruling for which he seeks reconsideration is an interlocutory one. Some courts within this judicial district have applied a more discretionary standard of review where interlocutory rulings are concerned, granting reconsideration "when it is consonant with justice to do so." *See, e.g., Sampath v. Concurrent Tech. Corp.*, No. CIV A 03-264J, 2006 WL 2642417, at *2 (W.D. Pa. Sept. 13, 2006) (Gibson, J.) ("For interlocutory orders, greater discretion is invested in the trial court with jurisdiction over the matter; district courts possess 'inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.'")(quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir.1973)); *Square D Co. v. Scott Elec. Co.*, Civil Action No. 06-459, 2008 WL 4877990, at *1 (W.D. Pa. Nov. 12, 2008) (Fischer, J.) (same). Nevertheless, "even in the case of interlocutory orders, 'courts should grant motions for reconsideration sparingly' because of the interest in finality." *Square D Co.*, 2008 WL 4877990, at *1 (quoting *Jairett v.*

*First Montauk Sec. Corp.*, 153 F. Supp. 2d 562, 580 (E.D. Pa. 2001)); *see also Micjan v. Wal-Mart Stores, Inc.*, No. CV 14-855, 2017 WL 879634, at *3 (W.D. Pa. Mar. 6, 2017) (Mitchell, M.J.) ("[E]ven those courts that have applied the more lenient standard have held that [w]hile a district court has the inherent power to reconsider an interlocutory order, [c]ourts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed. R. Civ. P. 59(e).") (quoting *Morgan v. Hawthorne Homes, Inc.*, C.A. No. 04-1809, 2010 WL 1286949, at *2 (W.D. Pa. Mar. 31, 2010) (Cohill, J.)) (internal quotation marks omitted; second and third alterations in the original).

## III. ANALYSIS

Although Plaintiff does not cite the relevant standard of review in his motion, it appears from context that he is arguing only the third basis for reconsideration (*i.e.*, a purported "need to correct clear error of law or prevent manifest injustice"), as no intervening change in the law or new evidence is cited. Plaintiff posits in his motion that this Court "may have overlooked the seizure (of employment) unique to that of police professionals within the Commonwealth of Pennsylvania," which occurs "when a policeman merely gets charged with a felonious crime." (Mot. for Reconsideration at 3, ECF No. 17.) The basis of Plaintiff's argument is Pennsylvania's "Confidence in Law Enforcement Act," 53 Pa. Stat. Ann. §§752.1 *et seq.* (West), pursuant to which Plaintiff was immediately suspended from his employment as a police officer, pending final disposition of the criminal charges. *See id.* §752.4.[1] Plaintiff contends that the "seizure" of

---

[1] This statute provides, in relevant part, that:

> [e]xcept in the case of a member of the Pennsylvania State Police, a law enforcement officer charged with an offense that would prohibit employment under section 3[ ] shall be immediately suspended from employment as a law enforcement officer until final disposition of the charge or upon acceptance into a program of Accelerated Rehabilitative Disposition, whichever occurs first.

53 Pa. Stat. Ann. § 752.4 (West) (internal footnote omitted).

4

his Municipal Police Officers' Education and Training Commission certification, "employment credentials," and "property interest in his police training" was "immediate and absolute." (*Id.*) He also claims to have suffered a deprivation of "the liberty of his employment" in that he "could no longer earn a living by way of his life's training and education as a police officer." (*Id.* at 5.)

Similar arguments were raised by Plaintiff in his brief opposing Zandarski's motion to dismiss. (*See* Pl.'s Br. Opp. Mot. Dismiss at 3-4 and 9-10, ECF No. 10.) Although the Court did not expound on this line of argument in its prior Opinion, it did consider and address Plaintiff's concerns about the alleged "seizure" of his employment. Specifically, the court noted:

> In addition to being publicly humiliated, DeForte claims that the false criminal charges destroyed his "life, law enforcement career, reputation, and future." ([Compl.] ¶205.) The Complaint, however, does not provide factual content to support these allegations. In addition, the adverse consequences that DeForte experienced with respect to his reputation and employment prospects were not state-imposed restrictions designed to secure his appearance in court. *See Black*, 835 F.3d at 367 (defining "seizure" in terms of "[p]retrial restrictions of liberty aimed at securing a suspect's court attendance") (quoting [*Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011)]). Moreover, DeForte does not cite any authority to suggest that courts within this circuit would view his circumstances as indicative of a Fourth Amendment seizure." Because DeForte has not alleged facts sufficient to satisfy the fifth element of his malicious prosecution claim, that claim will be dismissed.

(Op. at 19.) To the extent that Plaintiff is simply restating his prior argument "with added vigor," he has failed to demonstrate grounds for reconsideration of the March 24 ruling. *Peerless Ins. Co.,* 19 F. Supp. 3d at 651.

In an apparent attempt to demonstrate clear error, Plaintiff likens his situation to that of the plaintiff in *Black, supra.* This Court previously acknowledged that:

> [t]he court [in *Black*] found that a number of alleged facts supported the plaintiff's claim that she had been "seized." Specifically, the plaintiff, having been charged with arson, faced serious criminal charges. 835 F.3d at 367. Less than one month after being interrogated by police and accused of committing arson, she flew from her home in California to Pennsylvania for her arraignment because a warrant had

5

> been issued for her arrest. *Id.* At the police station, she spent more than an hour being fingerprinted and photographed. *Id.* Thereafter, she was required to post unsecured bail of $50,000 and was told this would be forfeited if she did not attend all court proceedings. *Id.* at 367-68. Significantly, the plaintiff was required to fly from California to Pennsylvania for twelve pre-trial conferences in one year, presumably at her own expense. *Id.* at 368. Because she did not live in the jurisdiction in which she was tried, Black faced serious charges and the possibility of incarceration if she did not travel. *Id.* "[Her] life was presumably disrupted by the compulsion that she travel out of state a dozen times." *Id.* Given these circumstances, the court was satisfied that Black had alleged "constitutionally significant restrictions on [her] freedom of movement for the purpose of obtaining h[er] presence at a judicial proceeding," and she was therefore "seized within the meaning of the Fourth Amendment." *Id.* (internal quotation marks and citation omitted) (alterations in the original). . . .

(Op. at 17-18.) Plaintiff contends that, like Ms. Black, he too suffered significant "disruption" by virtue of the loss of his professional credentials and employment prospects. (*See* Mot. for Recons. at 5-6 ("The 'disruption' caused by Zandarski's unconscionable actions literally stripping DeForte of his ability to earn a living for over two years would most certainly create a seizure. . . .").)

The comparison is inapt. In *Black,* the "disruptions" imposed on the plaintiff came in the form of (among other things) numerous compulsory trips to Pennsylvania for the purpose of appearing in court in connection with her criminal proceedings; thus, the Third Circuit concluded that Black had suffered "*constitutionally significant restrictions on [her] freedom of movement for the purpose of obtaining h[er] presence at a judicial proceeding.*" 835 F.3d at 368 (emphasis supplied). By contrast – as previously noted, "the adverse consequences that DeForte experienced with respect to his reputation and employment prospects were not state-imposed restrictions designed to secure his appearance in court." (Op. at 19.) As was true when this Court issued its March 24, 2017 ruling – and as remains true now, "DeForte does not cite any

6

authority to suggest that courts within this circuit would view his circumstances as indicative of a Fourth Amendment seizure." (*Id.*)[2]

Elsewhere in his motion, Plaintiff points out that he was "compelled by law to turn himself in to a district magistrate in order to be arraigned and placed on bail[3] regarding the false charges." (Mot. for Reconsideration at 5.) These circumstances – unlike the "disruptions" to Plaintiff's employment and career plans, *did* involve state-imposed restrictions on Plaintiff's freedom of movement for the purpose of obtaining his presence at court proceedings; however, for the reasons previously discussed in the March 24, 2017 Opinion, the restrictions were not constitutionally significant enough to amount to a Fourth Amendment "seizure." (*See* Op. at 18-19.)

Finally, Plaintiff maintains that, "but for Zandarski's false statements and fabricated evidence that DeForte was not a policeman, the outcome in Massachusetts would have been far different." (Mot. for Reconsideration at 6.) Plaintiff thus "holds Zandarski directly responsible for creating the false impression that DeForte was not a policeman," (*id.*), and he suggests that Zandarski is liable for influencing the Massachusetts authorities to initiate criminal proceedings against him in that Commonwealth.

This line of argument, like the others, provides no basis for reconsideration of the Court's prior ruling. First, Plaintiff did not allege in his Complaint that Zandarski was personally responsible for the criminal charges initiated against Plaintiff in Massachusetts. Second, the

---

[2] To the extent that Plaintiff seeks to vindicate a Fourth Amendment "seizure" of his alleged property interests in his professional credentials and/or his continued employment, the Court notes that: (a) such a claim, even if viable, has not been pled, and (b) in any event, the alleged seizure of said property does not support Plaintiff's malicious prosecution claim. Similarly, to the extent Plaintiff seeks to vindicate a Fourteenth Amendment violation based on the alleged deprivation of a protected property and/or liberty interest without due process of law, such claims have not been pled, nor would they in any way support the viability of plaintiff's Fourth Amendment malicious prosecution theory.

[3] As previously noted, the docket sheet reflects that Plaintiff was released on his own recognizance. (*See* Def.'s Br. Supp. Mot. to Dismiss, Ex. A, ECF No. 8-1 at p.3.)

7

Massachusetts incident was pled as background fact, but it did not form any basis for the malicious prosecution claims in Counts I and II of the Complaint. (*See* Compl. ¶¶228-247.) Third, and centrally as to this motion, for purposes of the §1983 malicious prosecution claim at Count I, Plaintiff did not allege a deprivation of his liberty in connection with the Massachusetts prosecution as would support a federal cause of action.

In sum, Plaintiff has not demonstrated a clear error of law (or in the Court's estimation, any error at all) relative to this Court's March 24, 2017 ruling, nor has he shown that that reconsideration of the ruling is necessary in order to prevent a manifest injustice. In essence, Plaintiff restates an argument in support of his §1983 malicious prosecution claim that was previously raised, considered, and rejected. Accordingly, this case does not present the type of situation where it is "consonant with justice" to revisit the prior order of dismissal.

## IV. CONCLUSION

Based upon the foregoing consideration, Plaintiff's motion for reconsideration (ECF No. 17) will be denied.

An appropriate Order will issue.

*[signature]*

Mark R. Hornak
United States District Judge

Dated: May 8, 2017

cc: All counsel of record